### UNITED STATES of America

v.

### Pridgen HENRY, Defendant.

### Crim. Action No. 96–00213.

United States District Court, District of Columbia.

Sept. 30, 1996.

344

Teresa Alva, Federal Public Defender for D.C., Washington, DC, for defendant.

Daniel Shane Read, U.S. Attorney's Office, Narcotics Division, Washington, DC, for the U.S.

## MEMORANDUM OPINION

SPORKIN, District Judge.

This matter comes before the Court on Defendant Pridgen Henry's motions to (1) suppress any and all evidence seized as a result of his arrest on June 6, 1996;[1] (2) sever the gun and ammunition possession offenses from the drug possession offense in this matter; and (3) bifurcate the trial on the

1. The evidence that Defendant seeks to suppress includes, but is not limited to, a handgun, ammunition, marijuana and an alleged statement.

firearm and ammunition possession charges. On September 26, 1996, the Court held a hearing on defendant's motions in which it heard testimony from Officer Seth Weston. The Court has considered the motions, all opposition thereto, and the arguments by the parties. Defendant's motion to sever will be granted. Defendant's motions to suppress and to bifurcate the trial will be denied.

## BACKGROUND

On June 6, 1996, at approximately 12:50 a.m., Metropolitan Police officers saw a group of people in the area of 1425 First Street S.W. The officers stopped their cars and proceeded to get out. Officer Weston walked up to the group and said "what's up," to which Defendant replied "nothing Mike." Defendant then put his right hand to his waist and grabbed an object which was protruding from his waistband. Officer Weston testified that the object appeared to him to be a gun. Defendant then turned and ran through an alley with his right hand still clinging to the object. Officers Levenberry and Weston chased the Defendant. When Defendant turned a corner to exit the alley, the officers heard a shot being fired. As the officers finally caught up with Defendant, a third officer drew a shotgun to cut-off his escape, he allegedly threw to the ground one ziplock bag containing marijuana. The officers then searched the area where the gunshot was fired and recovered from the ground a 9mm handgun with eight rounds of ammunition.[2]

Defendant was later Mirandized. He invoked his right to remain silent and his right to counsel. Despite invoking his rights, he asked what offense he was being charged with. Officer Weston replied that he was being charged with "assault on a police officer, because I get pissed off when someone shoots at me." According to Officer Weston, Defendant then responded that he "did not shoot at the police, [he] threw the gun to the ground and it went off when it hit the ground."

2. Subsequent analysis revealed that Defendant's fingerprints were left on the gun.

As a result of the events that occurred on June 6, 1996, Defendant was charged with Unlawful Possession of a Firearm by a Convicted Felon, in violation of 18 U.S.C. § 922(g)(1); Unlawful Possession of Ammunition by a Convicted Felon, also in violation of 18 U.S.C. § 922(g)(1); and Simple Possession of a Controlled Substance, in violation of 21 U.S.C. § 844(a).

## ANALYSIS

### I. Motion to Suppress Evidence

**A. The Gun, the Ammunition and the Drugs.** Defendant claims that the Fourth Amendment requires that this Court suppress the gun, the ammunition and the drugs found at the scene of Defendant's arrest (as well as any statements made by Defendant subsequent to his arrest) if the government cannot justify the arrest. *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 417–18, 9 L.Ed.2d 441 (1963); *United States v. Kandik,* 633 F.2d 1334, 1335 (9th Cir.1990). Defendant claims that his arrest was unjustified because the Government lacked probable cause for his arrest.

Probable cause must be evaluated in terms of the totality of the circumstances, as viewed by a reasonable and prudent police officer in light of his training and experience. *United States v. Green,* 670 F.2d 1148 (D.C.Cir.1981); *United States v. Lincoln,* 992 F.2d 356, 358 (D.C.Cir.1993). The totality of the circumstances in this case establish probable cause for the arrest of Defendant. Officer Weston is experienced in gun recognition and recovery. When he approached Defendant, he certainly recognized clearly that the bulge in his waistband, in connection with the manner in which he grabbed it, was consistent with possession of a gun. That recognition gave the officers probable cause to make an arrest. Consequently, any evidence or statements made after that moment in time were not the fruit of an illegal arrest.

In the alternative, the Court finds that Defendant has no standing to challenge the seizure of the loaded handgun recovered from the ground because it had been abandoned. This circuit has held that seizure of abandoned property does not violate the Fourth Amendment. *United States v. Jones,* 973 F.2d 928, 931 (D.C.Cir.1992); *see also United States v. Segars,* 31 F.3d 655, 658 (8th Cir.1994). A seizure does not occur when an officer makes a show of authority to an individual but that person fails to yield. *California v. Hodari D.,* 499 U.S. 621, 625–26, 111 S.Ct. 1547, 1550–51, 113 L.Ed.2d 690 (1991).

In the present case, the officers did not draw their guns when they approached the group of people which included Defendant. There was no physical contact or order to stop before Defendant turned and ran away; there was no "seizure" at this time. Although the officers chased Defendant, there was no show of force until after Defendant allegedly threw down the gun. Only at that point did an officer cutoff Defendant's escape and point a shotgun at him. Defendant was only then apprehended.[3] *United States v. Washington,* 12 F.3d 1128, 1132 (D.C.Cir. 1994). Any property disposed of prior to that time—including the loaded handgun—had been abandoned.

Based on the above analysis, Defendant's motion to suppress the guns, the ammunition and the drugs as evidence is denied.

**B. The Statement Made to Police.** Defendant argues that the alleged statement that he "did not shoot at the police, [he] threw the gun to the ground and it went off when it hit the ground" should be suppressed because the government obtained the statement in violation of his *Miranda* rights. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).[4]

*Miranda* applies when a defendant is subject to custodial interrogation. Such custodial interrogation automatically triggers numerous procedural safeguards to protect

---

**3.** The Court does not here reach the issue of whether Defendant was "seized" at the time he threw away the ziplock bag of marijuana.

**4.** Defendant also argues that the statement should be suppressed because at the time it was

made Defendant was not subject to lawful arrest. This contention fails for the same reason that the Court did not suppress the tangible evidence. See the discussion in (A) above.

346

an individual's Fifth Amendment right against compulsory self-incrimination. As explained in *Miranda*, custodial interrogation refers to "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444, 86 S.Ct. at 1612. The Supreme Court has stressed that these safeguards come into play only when the defendant is subject to *both* "custody" and "interrogation." *Rhode Island v. Innis*, 446 U.S. 291, 297, 100 S.Ct. 1682, 1688, 64 L.Ed.2d 297 (1980); *Beckwith v. United States*, 425 U.S. 341, 347, 96 S.Ct. 1612, 1616–17, 48 L.Ed.2d 1 (1975). The issue is whether Defendant's gratuitous statement was obtained in violation of *Miranda*.

■ Defendant was certainly under "custody" because he had been "deprived of his freedom of action in [a] significant way," 384 U.S. at 444, 86 S.Ct. at 1612—he had been arrested by the police after being apprehended in the 100 block of P Street, S.W. The more contentious issue is whether Officer Weston's statement (in response to Defendant's query) that Defendant was being charged with "assault on a police officer, because I get pissed off when someone shoots at me" meets the "interrogation" leg under *Miranda*.

■ The Supreme Court has stated that "the term 'interrogation' under *Miranda* refers not only to express questioning," but also to "words or actions on the part of the police officers that they should have known were reasonably likely to elicit an incriminating response from the suspect." 446 U.S. at 301, 100 S.Ct. at 1689–90. In the absence of finding such "interrogation," the statement would be deemed to have been made spontaneously, and not in response to any investigative questioning.[5]

Officer Weston's response to Defendant's query does not constitute "interrogation" under the *Rhode Island v. Innis* test. While the officer's statement that "I get pissed off when someone shoots at me" went beyond a simple answer to Defendant's query, Officer Weston had no reason to believe that the statement would elicit an incriminating response from the Defendant. Defendant could reasonably have been expected to say nothing or, at the very most, deny having shot at the police.

Defendant's substantive statement appears to have been entirely unexpected by the officers who, prior to the statement, believed themselves to have been Defendant's target. Contrary to Defendant's contention that the statement was part of a strategy to elicit a response, the fact is that Defendant was attempting to dispel the clear impression that he was shooting at the police officers. He clearly was attempting to exonerate himself from a very serious charge. Indeed, by the way the Government pled the indictment, it is clear that his explanation was accepted.

Thus, because Defendant's statement was not made incidental to "interrogation" as defined by *Miranda*, Defendant's motion to suppress the statement as evidence is denied.

## II. Motion to Sever the Offenses

Defendant also moves under Rule 14 of the Federal Rules of Criminal Procedure to sever counts one and two of the indictment, charging him with Unlawful Possession of a Firearm by a Convicted Felon and Unlawful Possession of Ammunition by a Convicted Felon, from count three, Simple Possession of a Controlled Substance. He argues that the joinder of these offense would unduly prejudice his right to a fair trial and are beyond the curative power of a cautionary instruction.

■ Rule 14 provides that the Court, in its discretion, may grant severance, order separate trials of counts, or provide whatever other relief justice requires if it appears that the defendant is prejudiced by joinder of offenses. Fed.R.Crim.P. 14. When consid-

---

5. The Court does not find any voluntariness issue with respect to Defendant's statement. There is no indication that, in light of Defendant's "background, experience and conduct" (*North Carolina v. Butler*, 441 U.S. 369, 375, 99 S.Ct. 1755, 1758, 60 L.Ed.2d 286 (1979)) his statement was anything other than the product of a "rational intellect and free will." *Blackburn v. Alabama*, 361 U.S. 199, 208, 80 S.Ct. 274, 280, 4 L.Ed.2d 242 (1980). Defendant initiated the conversation with Officer Weston and appears to have made all statements freely and without coercion.

ering a motion for severance, the Court must balance the accused's right to a fair trial against the public's interest in the efficient and economic administration of justice. *United States v. Phillips,* 664 F.2d 971 (5th Cir.1981). While judicial economy is a factor in deciding a severance motion, it should not outweigh a defendant's basic right to a fair trial. *United States v. Boscia,* 573 F.2d 827, 833 (3rd Cir.1978).

▮ The Court will grant severance because the gun and ammunition charges are predicated on both possession and a prior felony. Because the Government must prove the prior felony, the Court is concerned about the spillover effect on the drug possession charge. We must be absolutely sure that the jury makes an individualized guilt determination with respect to each of these charges. This can best be accomplished if the Simple Possession of a Controlled Substance Charge is severed from the charges of Unlawful Possession of a Firearm by a Convicted Felon and Unlawful Possession of Ammunition by a Convicted Felon.

### III. Motion to Bifurcate

Defendant also moves to bifurcate his trial on the firearm and ammunition possession charges so that jurors would not hear evidence of his alleged prior felony conviction unless and until they had determined that Defendant knowingly possessed a firearm (or ammunition, as the case may be) that had been transported in interstate commerce. Since his alleged prior felony conviction is for assault with a deadly weapon, Defendant argues that jurors would be unable to put such conviction aside and give full effect to the presumption of innocence. In support of his motion, Defendant cites to *United States v. Dockery,* 955 F.2d 50 (D.C.Cir.1992).[6]

▮ However, neither *Dockery* nor the earlier case of *United States v. Daniels,* 770 F.2d 1111 (D.C.Cir.1985) provides a *per se* rule requiring the severance of prior felony counts. Rather, the court of appeals cautioned trial judges and prosecutors to pro-

ceed with care in dealing with such issues when they arise. Trial courts retain considerable flexibility in these matters.

The Court believes that a stipulation as to the prior felony conviction, along with a cautionary instruction as to how the jury is to consider the stipulation, would cure the prejudice Defendant alleges might occur. Such a course of action would protect Defendant from the prejudicial effects of bad acts evidence and avoid weakening the Government's ability to prove its case. *United States v. Crowder,* 87 F.3d 1405, 1411 (D.C.Cir.1996). The potential for prejudice would be minimized by instructing the jury against using the stipulation for any purpose other than to establish the applicable elements of the offenses. *United States v. Fennell,* 53 F.3d 1296, 1302 (D.C.Cir.1995). It should be noted that treating the prior felony conviction by means of a stipulation would be permissible under a recent case in this circuit. *United States v. Myles,* 96 F.3d 491, 496 (D.C.Cir. 1996).

In the absence of a stipulation, the Court will explore other ways to avoid undue prejudice to Defendant. The Court does not find acceptable Defendant's suggestion that the Court first ask the jury to determine the arms and ammunition possession and interstate shipment issues and, if a positive finding is made by the jury, for the Court to then reconvene the jury and submit the prior felony issue to it. 18 U.S.C. § 922(g)(1) criminalizes possession of firearms and ammunition by a convicted felon. To make its case, it is incumbent on the Government to prove that Defendant had a prior felony conviction. Under these circumstances, the Government must introduce evidence showing Defendant's prior felony conviction. While Defendant, to an extent by an appropriate stipulation, can limit the nature and quality of the Government's proof on this issue, it cannot do away entirely with any mention of a prior conviction.

The fact is the prior conviction is an element of the crime. The Government has the

---

**6.** In *Dockery,* the circuit court held that failure to sever an ex-felon's firearm count from drug counts was an abuse of discretion where the Government successfully resisted defense efforts to introduce the prior conviction by stipulation or to try the count by the judge, and repeatedly referred to the defendant's prior conviction during the trial. 955 F.2d at 50.

duty and right to prove that element along with the other elements of the offense. The prejudicial aspect of that proof, as noted above, can be lessened by an appropriate stipulation by Defendant and an appropriate cautionary instruction by the Court.

It is noted that Defendant has not placed in issue the constitutionality of 18 U.S.C. § 922(g)(1). Unless Defendant were able to attack with success the constitutionality of 18 U.S.C. § 922(g)(1) because of its prejudicial effect, the case must be presented to the jury with all elements of the crime, including reference to Defendant's prior felony conviction.

## CONCLUSION

Defendant's motion to suppress any and all evidence seized as a result of his arrest on or about June 6, 1996 is denied on the grounds stated above. His motion to sever the drug offense from the firearm and ammunition offenses will be granted. His motion to bifurcate the firearm and ammunition offenses is denied.