**UNITED STATES of America**

v.

**Gregory O. DANIELS, Appellant.**

**No. 84–5695.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 17, 1985.

Decided Aug. 16, 1985.

As Amended Sept. 25, 1985.

---

Frank J. Magill, Jr., Student Counsel, with whom Steven H. Goldblatt, Washington, D.C., Appointed by this Court and Martha J. Tomich, Washington, D.C., were on brief, for appellant.

Ellen Bass, Asst. U.S. Atty., Washington, D.C., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell, Judith Hetherton and Douglas J. Behr, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before MIKVA and STARR, Circuit Judges, and McGOWAN, Senior Circuit Judge.

MIKVA, Circuit Judge:

We review in this case a criminal conviction for armed bank robbery, carrying a pistol without a license, and possession of a firearm subsequent to a felony conviction. Appellant, Gregory O. Daniels, argues that the district court erred reversibly by allowing the possession count to be tried together with the robbery and license counts. Proof of a prior felony conviction against the defendant was introduced as an element of the possession charge, but would probably have been inadmissible in a separate trial for bank robbery and carrying an unlicensed pistol. Daniels contends therefore that he was impermissibly prejudiced by the district court's refusal to sever the counts or to hold a two-stage trial. On the facts of this case, however, we are unable to conclude that Daniels was unfairly prejudiced by the procedure used by the district court, and we therefore affirm his conviction.

## I.

In connection with a June 1983 bank robbery in northwest Washington, Daniels was indicted on four counts by a Grand Jury. Count I charged Daniels and a codefendant with armed bank robbery in violation of 18 U.S.C. § 2113(a)(d). Count 2 charged Daniels with carrying a pistol without a license, in violation of D.C.Code

§ 22–3204. Counts 3 and 4 charged Daniels with possessing of a firearm after a felony conviction, in violation of 18 U.S.C. (App. I) § 1202(a)(1). This last provision, enacted by Congress in 1968, prohibits possession of "any firearm" by, *inter alia,* "[a]ny person who ... has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony." Counts 2 and 3 involved the pistol Daniels was alleged to have used during the robbery; Count 4 concerned a different pistol seized from Daniels' apartment four days after the robbery but not alleged to have been used in that crime.

Daniels moved to sever Counts 3 and 4. In his written motion, Daniels argued only that neither gun had been shown to be the weapon used in the robbery. At a hearing before the district judge, however, defense counsel also contended that severance was warranted because introduction of Daniels' prior felony conviction, which was an element of the firearm possession offenses, would be unduly prejudicial with respect to the robbery and license charges.

The district court denied the motion as to Count 3 but granted it as to Count 4. The Court reasoned that the pistol involved in Count 3 had been "at least tentatively identified" as the weapon used in the robbery and that trial of Count 3 along with Counts 1 and 2 would therefore not be unduly prejudicial. In contrast, the district judge found that possession of the weapon described in Count 4 bore no reasonable relationship to the bank robbery, and that the jury might unfairly infer a general criminal disposition from Daniels' possession of the weapon.

Daniels had previously been convicted of bank robbery, but the jury was not told the nature of his offense. Instead, the jury was read a stipulation stating simply that Daniels had been convicted of an unspecified felony. The government tacitly concedes that the stipulation would not have been admissible in a separate trial of Counts 1 and 2. The district judge instructed the jury twice concerning the limited evidentiary use to which the stipulation

should be put—first at the time the stipulation was read to the jury, and again in the final jury instructions. In addition, the indictment was retyped before being submitted or read to the jury so that it did not indicate what Daniels' prior felony was.

The government's other evidence included the testimony of three eyewitnesses to the robbery who identified Daniels from a photo array shown to them two days after the crime, expert testimony identifying a palm print left on the bank counter as Daniels', and testimony by an eyewitness that the gun in Count 3 resembled the weapon used in the robbery. Daniels presented no evidence, and the jury convicted him of all three counts. The severed fourth count was dismissed at the government's request.

## II.

Before reaching the merits of Daniels' claim, we address the government's threshold contention that the claim was waived below. The government points out that Daniels' written motion in district court did not raise the argument now pressed on appeal, and that Daniels never specifically proposed a two-stage trial to the district judge.

The suggestion that Daniels had thus waived any objection to the joinder of the charges against him is wholly frivolous. Rule 12(b) of the Federal Rules of Civil Procedure allows pretrial motions to be made orally or in writing, "at the discretion of the trial judge." The problem presented by the Daniels' prior felony conviction was raised orally before the district judge after he gave defense counsel express permission to raise an additional argument for severance beyond the argument made in the written motion. As to Daniels' failure to request the particular remedy of a two-stage trial, we have noted previously that "a pretrial motion need not state explicitly the grounds upon which a motion is made"; all that is necessary is that the motion "contain facts and arguments that make clear the basis of defendant's objections." *United States v. Bailey,* 675 F.2d 1292,

1294 (D.C.Cir.), *cert. denied sub nom. Walker v. United States,* 459 U.S. 853, 103 S.Ct. 119, 74 L.Ed.2d 104 (1982). Daniels clearly met this minimal requirement.

■ In support of its waiver argument, the government cites *Bailey,* as well as *United States v. Yates,* 734 F.2d 368 (8th Cir.1984), and *United States v. Poore,* 594 F.2d 39 (4th Cir.1979). Each of these cases is manifestly inapplicable, however, because in each the defendant raised on appeal a ground for severance never argued below at all. Federal prosecutors have a duty to aid the court in doing justice; their job is not to save convictions from reversal at all costs. Prosecutors are of course advocates, but before contending that a conviction should be affirmed on procedural grounds, just as before proffering evidence that is potentially prejudicial, "[t]he assistant United States attorney must step back from his or her partisan role" and assess the situation "in an objective and fair-minded fashion." *United States v. Foskey,* 636 F.2d 517, 525–26 (D.C.Cir.1980). We believe the waiver argument raised in this case was totally lacking in merit.

### III.

■ Rule 14 of the Federal Rules of Criminal Procedure gives district courts broad powers to prevent the prejudice that can result when different charges are adjudicated in a single proceeding:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever relief justice requires.

Fed.R.Crim.P. 14. As long as the charges were properly joined in the indictment or information—and there is no allegation on this appeal that the initial joinder was erroneous—district judges are ordinarily allowed wide latitude in determining whether to grant severance or other relief; the trial court's decision may generally be reversed "only upon a finding of clear prejudice and abuse of discretion." *United States v. Lewis,* 626 F.2d 940, 945 (D.C.Cir.1980); *accord, e.g., United States v. Kim,* 595 F.2d 755, 770 (D.C.Cir.1979).

Daniels requests that this court exercise its supervisory power to limit the district court's discretion under Rule 14. Specifically, Daniels suggests that we rule that an ex-felon charge—such as the firearm possession count in this case—may not be tried together with another charge if the prior felony conviction would be inadmissible in a separate trial of the other charge. He argues that in such situations the trial court should order separate trials or a two-stage trial. Under the latter procedure, the jury would reach its verdict on the other charges before hearing the prior felony evidence and ruling on the ex-felon charge.

■ The supervisory power of federal appellate courts is well established. "[A]n appellate court will, of course, require the trial court to conform to constitutional mandates, but may likewise require it to follow procedures deemed desirable from the viewpoint of sound judicial practice although nowise commanded by statute or by the Constitution." *Cupp v. Naughten,* 414 U.S. 141, 146, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). We need not explore the contours of this authority here, because although we agree with Daniels that joinder of ex-felon charges creates special problems when evidence of the prior felony would not be admissible in a separate trial of the other charges, we do not believe that an absolute rule against such joinder is appropriate.

### IV.

■ Our judicial tradition has long barred the introduction of evidence of prior misconduct to prove that an accused was likely as a matter of disposition to have

committed the offense for which he or she is on trial. The exclusion and its established exceptions are codified in the Federal Rules of Evidence:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Fed.R.Evid. 404(b).

█ The exclusion of bad acts evidence is founded not on a belief that the evidence is irrelevant, but rather on a fear that juries will tend to give it excessive weight, and on a fundamental sense that no one should be convicted of a crime based on his or her previous misdeeds. *See, e.g., Michelson v. United States,* 335 U.S. 469, 475–76, 69 S.Ct. 213, 218–19, 93 L.Ed. 168 (1948); McCormick on Evidence § 190 (E. Cleary 3d ed. 1984); 1A J. Wigmore, Evidence in Trials at Common Law § 58.2 (P. Tillers rev. ed. 1983). That juries treat prior convictions as highly probative has been confirmed by empirical investigations. *See* H. Kalven & H. Zeisel, The American Jury 160 (1966). Such reliance by the trier of fact offends the "long standing tradition that protects a criminal defendant from 'guilt by reputation' and from 'unnecessary prejudice.'" *United States v. Cook,* 538 F.2d 1000, 1004 (D.C.Cir.1976).

As the Fifth Circuit has observed, "a concomitant of the presumption of innocence is that a defendant must be tried for what he did, not for who he is." *United States v. Myers,* 550 F.2d 1036, 1044 (5th Cir.1977). This precept is "fundamental to American jurisprudence," *United States v. Foskey,* 636 F.2d 517, 523 (D.C.Cir.1980). Consequently, "[e]vidence of a prior crime 'is always ... prejudicial to a defendant. It diverts the attention of the jury from the question of the defendant's responsibility for the crime charged to the improper issue of his bad character." *United States v. James,* 555 F.2d 992, 1000 (D.C.Cir.1977)

(quoting *United States v. Phillips,* 401 F.2d 301, 305 (7th Cir.1968)). Even when the trial judge carefully instructs the jury regarding the limited significance it should give to evidence of other crimes, prejudice to the defendant is "well-nigh inescapable." *United States v. Carter,* 482 F.2d 738, 740 (D.C.Cir.1973).

There is thus a high risk of undue prejudice whenever, as in this case, joinder of counts allows evidence of other crimes to be introduced in a trial of charges with respect to which the evidence would otherwise be inadmissible. How to reconcile this risk with the broad discretion generally granted to trial judges under Rule 14 of the Federal Rules of Criminal Procedure is a matter of first impression for this court. Our resolution is guided but not controlled by the Supreme Court's decision in *Spencer v. Texas,* 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967), and by our own decision in *Drew v. United States,* 331 F.2d 85 (D.C.Cir.1964).

In *Spencer,* the Supreme Court upheld convictions under Texas recidivist statutes, which provided stiffer sentences for repeat offenders. Under the statutes, jurors were informed of the prior convictions before they deliberated on the issue of guilt. By the time the case reached the Supreme Court, Texas had switched to a two-stage trial procedure, but the Court held that convictions under the old procedure did not violate the constitutional guarantee of due process.

It is far from clear, however, that the Court would have upheld the same procedure in a *federal* trial court. Much of the motivation for the *Spencer* decision was the Court's reluctance to constitutionalize state evidence law; the Court noted that its authority was significantly more expansive when it reviewed federal court convictions under its supervisory power. *See* 385 U.S. at 562–64, 87 S.Ct. at 652–54. Moreover, Justice Stewart made clear that he concurred in the Court's judgment only because the question raised by the case was not the propriety of the Texas procedure but only its conformity to the fourteenth

amendment, *see id.* at 569, 87 S.Ct. at 656 (Stewart, J., concurring); when Justice Stewart's vote is added to those of the four dissenting justices, it appears quite possible that the decision would have gone the other way had the trial been held in a federal court.

In *Drew,* we considered one kind of prejudice that can result from joinder of counts—the prejudice caused when the jury takes one charge into account when deciding whether the defendant is guilty of another. We reaffirmed that a motion for severance under Rule 14 is generally addressed to the trial court's discretion: "in any given case the court must weigh prejudice to the defendant caused by the joinder against the obviously important consideration of justice and expedition in judicial administration." 331 F.2d at 88. We noted that in certain circumstances joinder of offenses is permissible even if the evidence of one charge would not otherwise be admissible in a trial of the other:

> [E]ven where the evidence would not have been admissible in separate trials, if from the nature of the crimes charged, it appears that the prosecutor might be able to present the evidence in such a manner that the accused is not confounded in his defense and the jury will be able to treat the evidence relevant to each charge separately and distinctly, the trial judge need not order severance or election at the commencement of the trial. If, however, it appears at any later stage in the trial that the defendant will be embarrassed in making his defense or that there is a possibility that the jury will become or has become confused, then, upon proper motion, the trial judge should order severance.

*Id.* at 91–92.

Nonetheless, we reversed the district judge's denial of severance in *Drew* as an abuse of discretion. Not only would evidence concerning each of the two offenses charged in that case not have been admissible in a separate trial of the other offense, but in addition we found that the crimes were sufficiently similar so that the jury was likely to cumulate the evidence improperly.

■ This problem is not present in the case before us today; there is no suggestion that the jury could not keep straight the three different charges against Daniels and the evidence supporting each. The problem that this case does pose—the admissibility of a prior felony conviction because of joinder of an ex-felon offense—was not considered by the court in *Drew.* Consequently, we can take from *Drew* only the general notions that the trial court's discretion under Rule 14 should be respected, but that undue prejudice from other evidence pertaining to other crimes must not be allowed.

Other circuits, however, have established the precise question raised in this case. The Third Circuit has said in dicta that "if it is determined that the convictions would not be admissible on the other counts—that were these counts to be tried alone the jury would not hear this evidence—then severance should be granted." *United States v. Busic,* 587 F.2d 577, 585 (3d Cir.1978), *rev'd on other grounds,* 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980). At least one district court in the Third Circuit, however, has treated that language as merely hortatory. *See United States v. Huslage,* 480 F.Supp. 870 (W.D.Pa.1979). Moreover, the Fourth, Sixth, Seventh and Tenth Circuits have all rejected the approach apparently taken in *Busic. See United States v. Silva,* 745 F.2d 840, 843 (4th Cir.1984), *cert. denied,* — U.S. ——, 105 S.Ct. 1404, 84 L.Ed.2d 791 (1985); *United States v. Valentine,* 706 F.2d 282, 290 (10th Cir.1983); *United States v. Aleman,* 609 F.2d 298 (7th Cir.1979), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980); *United States v. Roe,* 495 F.2d 600 (10th Cir.), *cert. denied,* 419 U.S. 858, 95 S.Ct. 107, 42 L.Ed.2d 92 (1974); *United States v. Lee,* 428 F.2d 917 (6th Cir.1970), *cert. denied,* 404 U.S. 1017, 92 S.Ct. 679, 30 L.Ed.2d 665 (1972). These courts reasoned that severance to avoid prejudice is a matter left to the trial judge's discretion, and

that juries must be presumed to follow limiting instructions.

We are not nearly so sanguine concerning the efficacy of jury instructions in curing the prejudice caused by the introduction of other crimes evidence. To tell a jury to ignore the defendant's prior convictions in determining whether he or she committed the offense being tried is to ask human beings to act with a measure of dispassion and exactitude well beyond mortal capacities. In such cases, it becomes particularly unrealistic to expect effective execution of the "mental gymnastic" required by limiting instructions, *Nash v. United States*, 54 F.2d 1006, 1007 (2d Cir.) (Learned Hand, J.), *cert. denied*, 285 U.S. 556, 52 S.Ct. 457, 76 L.Ed. 945 (1932), and "the naive assumption that prejudicial effects can be overcome by instructions to jury" becomes more clearly than ever "unmitigated fiction," *Krulewitch v. United States*, 336 U.S. 440, 453, 69 S.Ct. 716, 723, 93 L.Ed. 790 (1949) (Jackson, J., concurring). As the Third Circuit has observed, once evidence of prior crimes reaches the jury, "it is most difficult, if not impossible, to assume continued integrity of the presumption of innocence. A drop of ink cannot be removed from a glass of milk." *Government of the Virgin Islands v. Toto*, 529 F.2d 278, 283 (3d Cir.1976); *accord*, *United States v. Carter*, 482 F.2d 738, 740 (D.C.Cir.1973).

 Nonetheless, we are unable to say that joinder in such a situation is *always* an abuse of discretion under Rule 14, and we see no cause to invoke our supervisory power in order to fashion a similarly absolute rule. In particular, we think the district court in this case demonstrated a sufficiently scrupulous regard for the defendant's right to a fair trial to warrant affirmance; on these facts and this record, we are not convinced that the joinder of the ex-felon offense caused Daniels undue prejudice. We emphasize, however, that joinder decisions must be informed by a respect for the special problems created by the introduction of other crimes evidence, and that it consequently will behoove pros-

ecutors and trial judges to proceed with caution when situations similar to this one face them in the future.

## V.

 In making it illegal for ex-felons to possess firearms, Congress was motivated by an understandable desire to restrict ownership of weapons by those whose pasts suggested even a minimal proclivity toward crime. *See* 18 U.S.C. (App. I) § 1201; S.Rep. No. 1097, 90th Cong., 2d Sess. 2–3, *reprinted in* 1968 U.S.Code Cong. & Ad.News 2112, 2113–14. Unfortunately, a side consequence of the law has been to provide federal prosecutors with a powerful tool for circumventing the traditional rule against introduction of other crimes evidence. Whenever an ex-felon is charged with committing a crime involving the use of a gun, prosecutors may inform the jury of the defendants' prior convictions merely by taking the time to include a charge of firearms possession.

The results in this case are instructive. Daniels was sentenced to concurrent prison terms of ten years for armed bank robbery, four years for carrying an unlicensed pistol, and two years for possession of a firearm after a felony conviction. The conviction for possession is thus virtually certain to have no effect on the time served by the defendant; all the government obtained by adding the possession count was the ability to tell the jury that Daniels had previously been convicted of a felony.

We do not believe Congress had such a tactic in mind when it criminalized possession of firearms by ex-felons, and we do not believe the federal judiciary should encourage or countenance this use of the law. The exclusion of other crimes evidence is not simply a "technicality" designed to prevent law enforcement personnel from doing their job; it reflects and gives meaning to the central precept of our system of criminal justice, the presumption of innocence. That exclusion and that precept must not be discarded in the name of judicial efficiency.

Our affirmance of this conviction is closely tied to the facts at hand and to the scrupulous care taken by the trial judge. In general, it is neither commendable nor prudent for prosecutors to seek to use ex-felon counts to escape the encumbrances of the presumption of innocence.

*Affirmed.*

STARR, Circuit Judge, concurring in the judgment:

I concur in today's judgment that Mr. Daniels was not unfairly prejudiced by the District Court's failure to sever Count 3 from the remaining charges. Additionally, I wholeheartedly agree with the court's refusal to embrace a bright line rule mandating severance whenever one count requiring proof of a prior felony conviction is joined with other charges for trial. The court's opinion leaves me, however, with several concerns which I shall briefly outline.

### (1)

While refusing to adopt appellant's proposed bright line rule of automatic severance, the court clearly views our supervisory powers as sufficiently broad to permit such a result. I am troubled by the proposition that the inherent supervisory powers of the federal courts permit Courts of Appeals to sit as roving supervisors of the federal trial bench, shaping rules to meet felt needs of one sort or another as they arise, even where a specific rule of procedure expressly controls the issue. Federal Rule of Criminal Procedure 14 speaks authoritatively to the trial courts' broad discretion in ruling on severance motions. The notion that this court is empowered to fashion a supervisory rule in an area already governed by a rule promulgated by the Judicial Conference and Congress is, to my mind, unsettling. The Judicial Conference and, ultimately, the Congress itself have occupied this field, as it were, thus counseling restraint in judicially legislating in an area already addressed authoritatively by the judiciary's policy-making body and the Article I branch.

### (2)

In its opinion, the court dwells at length on one factor that trial courts must consider in determining whether severance is justified—prejudice to the defendant. Concededly, this is a valid and important concern. Yet, in admonishing trial courts to "proceed with caution" in allowing otherwise proper joinder of prior felony counts, the court overlooks what seems to me the essence of the severance question, namely, the balancing of prejudice to the defendant against the effective utilization of judicial resources. Joined trials have long been recognized to be of fundamental importance in the orderly administration of justice, particularly in an era beset with crowded court dockets. In weighing the prejudice resulting from joinder against the benefits flowing from it, the expeditious use of scarce judicial resources has been recognized as a "dominant concern." *United States v. Nolan,* 700 F.2d 479, 482 (9th Cir.), *cert. denied,* 462 U.S. 1123, 103 S.Ct. 3095, 77 L.Ed.2d 1354 (1983); *see also United States v. Lyles,* 593 F.2d 182, 191 (2d Cir.), *cert. denied,* 440 U.S. 972, 99 S.Ct. 1537, 59 L.Ed.2d 789 (1979). As the Second Circuit, speaking through Judge (now Chief Judge) Feinberg, aptly stated, "Such a rule [permitting joinder] conserves judicial resources, alleviates the burdens on citizens serving as jurors, and avoids the necessity of having witnesses reiterate testimony in a series of trials." *United States v. Borelli,* 435 F.2d 500, 502 (2d Cir.1970). The court's silence today on these countervailing considerations is odd in light of this circuit's leading opinion on the severance question, a decision charging courts to "weigh [the] prejudice to the defendant caused by the joinder against the obviously important considerations of economy and expedition in judicial administration." *Drew v. United States,* 331 F.2d 85, 88 (D.C.Cir.1964). Thus, while the court understandably emphasizes the need for trial courts to guard scrupulously against prejudice to the defendant, the interests in an orderly and efficient judicial system must also be weighed in the balance.

### (3)

The court states that its concern over the joinder of prior felony counts is guided by the Supreme Court's decision in *Spencer v. Texas* and this circuit's decision in *Drew.* Insofar as the majority would appear to be urging severance in similar cases, I find the assertion unconvincing. *Spencer* clearly stands for the proposition that severance is *not* required where multiple counts result in the introduction in evidence of a defendant's prior conviction. In *Spencer,* the Court stated that the governmental interest in the orderly administration of justice outweighed the defendant's right to be free from all prejudice and, equally important, that "[t]he defendant's interests are *protected by limiting instructions,* and by the discretion residing with the trial judge to limit or forbid the admission of particularly prejudicial evidence." 385 U.S. at 561, 87 S.Ct. at 652 (citation omitted) (emphasis added).

I must, by the by, question this court's "headcounting" of the *Spencer* Court, insofar as the arithmetic leads to the assertion that "when Justice Stewart's [concurring] vote is added to those of the four dissenting justices, it appears quite possible that the decision would have gone the other way had the trial been held in a federal court." Opinion at 1117. First, Justice Stewart's one-paragraph opinion does not suggest that, legally, a different result should have obtained in that case. His opinion states, instead, the Justice's own view that joined trials—while legally permissible—are not the optimal method for trying counts involving prior convictions. As Justice Stewart stated: "[I]f the Constitution gave me a roving Commission to impose upon the criminal courts of Texas, my own notions of enlightened policy, I would not join the Court's opinion.... But the question for decision is not whether we applaud or even whether we personally approve the procedures followed." 385 U.S. at 569, 87 S.Ct. at 656. We on the Court of Appeals similarly do not sit to fashion optimal methods for the maximization of liberty interests; our job is, rather, to decide whether the procedures utilized below conformed to law. In my view, they clearly did.

### (4)

Finally, I am constrained to demur to my brethren's agnosticism about the efficacy of curative instructions to juries. It is a judicial article of faith that "[a] jury is presumed to follow a trial court's instructions." *United States v. Jackson,* 627 F.2d 1198, 1213 (D.C.Cir.1980); *see also Shotwell Mfg. Co. v. United States,* 371 U.S. 341, 367, 83 S.Ct. 448, 463, 9 L.Ed.2d 357 (1963). The reason for this basic principle is simple. For all its foibles, the jury system demands that we have faith in the people. For our system to work, we must put aside our skepticism and have faith that the jury will do its duty when it is, as here, repeatedly and properly instructed as to the limited use of certain evidentiary items. To bring all this to home, we need go no further than *Spencer* itself to be reminded that it is the law, pure and simple, that jury instructions can sufficiently protect a defendant's interest in being free from undue prejudice. 385 U.S. at 561, 87 S.Ct. at 652.

In sum, Rule 14 and the case law require that trial courts be left free to effectuate the will of Congress and to take whatever steps they deem necessary to minimize prejudice. Severance is only one remedy— and certainly the most extreme—in the federal courts' remedial arsenal. Judge Hogan, using the tools at his disposal, assured to the satisfaction of all members of this panel that Mr. Daniels received a fair trial. Our colleagues on the district court bench should similarly be left free to fashion, in their sound discretion, appropriate remedies and thus "provide whatever relief justice requires." FED.R.CRIM.P. 14. Nothing more can properly be required.