# IN THE COURT OF APPEALS OF IOWA

No. 23-0776
Filed April 24, 2024

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**AARON GARY WHITTLE,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Winneshiek County, Laura Parrish, Judge.

Defendant appeals his conviction for second-degree murder. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Maria Ruhtenberg, Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Olivia D. Brooks, Assistant Attorney General, for appellee.

Considered by Tabor, P.J., and Greer and Schumacher, JJ.

**SCHUMACHER, Judge.**

Aaron Whittle appeals his conviction for second-degree murder, arguing the district court wrongfully admitted evidence of dead cattle and farm equipment in a state of disrepair. He argues this evidence was irrelevant, more prejudicial than probative, and that it was inadmissible evidence of prior bad acts under Iowa Rule of Evidence 5.404(b).

## I. Background Facts and Prior Proceedings

A reasonable jury could find these facts. Whittle and his father, Larry Whittle,[1] worked on a farm together in Decorah, Iowa. For the last several years, the Whittles primarily engaged in the buying and selling of cattle. The Whittles previously ran a dairy business, but no longer did so at the time of these events, which Whittle claimed resulted in certain farm machinery falling into disuse and disrepair.

Whittle handled most of the physical labor, while his father, who was seventy-four years old, bought, sold, and marketed the cattle. Originally, the farm's bookkeeping was done by Whittle's mother, but when she passed away in 2021, that responsibility fell to Whittle. Whittle testified that he had no idea what he was doing when it came to handling the farm's finances. And several times this resulted in overdrafts on their accounts when Whittle struggled to keep up with his father's cattle purchases. Whittle claimed these purchases included cattle that were young and sick, which his father believed could be rehabilitated and sold for profit.

---

[1] To avoid confusion, we refer to Larry Whittle by his first and last name.

According to Whittle, many of these sick cattle died, resulting in the farm having pits of dead cattle which were being composted.

Larry Whittle died during the night on March 17, 2022, after being shot by Whittle. Whittle tried to conceal his father's death. After shooting his father in the living room, where his father had been sleeping in a recliner, Whittle burned his father's body, the shotgun, and the recliner in a metal feeding trough. He then hid the feeding trough among large round hay bales on the farm. Whittle tried to clean blood out of the carpet in the living room, but when he could not do so, he placed a rug over the blood stain. In an attempt to make it appear his father had gone missing, he drove his father's truck to a park several miles away, left it there, and walked home. Afterward, he bought a new recliner to replace the one he had burned, went about his daily chores, and met friends for supper at a local pizza establishment.

After Larry Whittle's death, a farmhand who worked for the Whittles noticed that Larry Whittle's truck was missing. When he brought this to Whittle's attention, Whittle explained his father left the night before and never returned. Whittle then called the sheriff to report his father missing. Authorities began an investigation of the disappearance and concluded Whittle may have been involved. Law enforcement executed a search warrant on the farm. A search of the farm revealed the blood-stained carpet, as well as dead cattle and farm machinery in disrepair. Whittle was interviewed by law enforcement. In that interview, he admitted killing his father and covering it up, but he claimed it was done accidentally and in self-defense after he and his father fought over a shotgun.

Whittle was arrested and charged with murder in the first degree, a class "A" felony. Before trial, he filed a motion in limine to exclude certain pieces of State evidence, including evidence of the dead cattle and farm machinery in disrepair. Whittle argued this evidence was not relevant, was more prejudicial than probative, and was inadmissible prior bad act evidence. The court denied this portion of Whittle's motion. The case proceeded to a jury trial, and Whittle was convicted of a lesser-included offense of murder in the second degree. He was sentenced to an indeterminate term of fifty years, with a mandatory minimum sentence of seventy percent, or thirty-five years. Whittle appeals.

## II. Standard of Review

We review evidentiary rulings for abuse of discretion. *State v. Thoren*, 970 N.W.2d 611, 620 (Iowa 2022). "A district court abuses its discretion when it bases its decisions on grounds or reasons clearly untenable or to an extent that is clearly unreasonable . . . [or] if it bases its conclusions on an erroneous application of the law." *Id.* (quoting *Stender v. Blessum*, 897 N.W.2d 491, 501 (Iowa 2017)).

## III. Evidence of Dead Cattle and Farm Machinery in Disrepair

Whittle's sole argument on appeal is that evidence of dead cattle and farm machinery in disrepair should not have been admitted under Iowa Rules of Evidence 5.402, 5.403, and 5.404(b). He argues the evidence was not relevant, more prejudicial than probative, and inadmissible evidence of prior bad acts.

Although the State acknowledges Whittle preserved error on his rule 5.404 challenge, the State contests preservation of error as to rules 5.402 and 5.403. The admittance of the evidence at issue was raised and addressed in Whittle's motion in limine and in the court's ruling on that motion. "Generally, denial of a

motion in limine does not preserve error for appellate review." *Id.* at 620–21. But "if the ruling reaches the ultimate issue and declares the evidence admissible or inadmissible, it is ordinarily a final ruling and need not be questioned again during trial." *State v. O'Connell*, 275 N.W.2d 197, 202 (Iowa 1979). Both sides agree that the motion in limine was a final ruling. And to the extent that it was raised again at trial, defense counsel stated Whittle's objection as "those raised in the motion in limine," and the court did not alter the previous ruling on the motion.

We turn first to the issue of error preservation. In relevant part, Whittle's motion urged the denial of admittance of any testimony or reference to the dead cattle, the health condition of the living cattle that were found on the farm, or evidence of an inoperable piece of farm machinery, as such were not relevant to the issue of the murder of Larry Whittle; that the evidence did not tend to make any facts more or less probable; and that testimony or reference to the dead cattle or the medical state of the living cattle was more prejudicial than probative. Whittle further argued that the evidence was impermissible prior bad acts evidence.

In the ruling on the motion in limine, the court determined the prejudicial effect to the defendant of evidence related to poor farming practices did not substantially outweigh the probative value of motive evidence related to a determination of whether the defendant committed murder. The court determined the evidence to have a valid, non-character theory of relevance, and that the evidence was admissible prior bad acts evidence as such related to motive. While

the court did not cite to each individual rule of evidence, we choose to address the merits of all three challenges.[2]

Relevant evidence is generally admissible unless its prejudice outweighs its probative value. *See* Iowa Rs. Evid. 5.402, 5.403. We determine that the evidence was relevant to show the motive of Whittle and the condition of the cattle operation at the time of Larry Whittle's death. We also conclude that while it may be prejudicial to Whittle, such prejudice does not outweigh the probative value of the evidence. All "[r]elevant evidence is inherently prejudicial in the sense of being detrimental to the opposing party's case." *State v. Delaney,* 526 N.W.2d 170, 175 (Iowa Ct. App. 1994). "The relevant inquiry is not whether the evidence is prejudicial or inherently prejudicial but whether the evidence is unfairly prejudicial, that is the 'evidence has an undue tendency to suggest a decision on an improper basis.'" *State v. Caples*, 857 N.W.2d 641, 647 (Iowa Ct. App. 2014) (citation omitted). "[E]vidence that appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or triggers other mainsprings of human action may cause a jury to base its decision on something other than the established propositions in the case." *State v. Plaster*, 424 N.W.2d 226, 231 (Iowa 1988) (citation omitted).

Iowa Rule of Evidence 5.404(b) governs admissibility of other crimes, wrongs, or acts:

> b. *Other crimes, wrongs, or acts.*

---

[2] The foregoing error-preservation rule "is not concerned with the substance, logic, or detail in the district court's decision. If the court's ruling indicates that the court *considered* the issue and necessarily ruled on it, even if the court's reasoning is 'incomplete or sparse,' the issue has been preserved." *Lamasters v. State*, 821 N.W.2d 856, 864 (Iowa 2012) (citation omitted).

> (1) *Prohibited uses.* Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
> (2) *Permitted uses.* This evidence may be admissible for another purpose such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

In determining whether evidence of an "other act" is admissible, we use a three-step analysis:

> (1) "the evidence must be relevant and material to a *legitimate* issue in the case other than a general propensity to commit wrongful acts"; (2) "there must be clear proof the individual against whom the evidence is offered committed the bad act or crime"; and (3) if the first two prongs are satisfied, "the court must then decide if [the evidence's] probative value is substantially outweighed by the danger of unfair prejudice to the defendant."

*State v. Richards*, 879 N.W.2d 140, 145 (Iowa 2016) (quoting *State v. Sullivan*, 679 N.W.2d 19, 25 (Iowa 2004)).

We first note that from the briefing it is not clear how the existence of dead cattle or unused farm equipment on a cattle farm reveal a "propensity to commit wrongful acts." *See id.* (citation omitted). This is particularly true when Whittle asserts the cattle died because the cattle were sick when purchased and the farm equipment was unused simply because the Whittles ceased dairy farming.

> [T]he public policy for excluding bad-acts evidence "is founded not on a belief that the evidence is irrelevant, but rather on a fear that juries will tend to give it excessive weight, and on a fundamental sense that no one should be convicted of a crime based on his or her previous misdeeds."

*State v. Sullivan*, 679 N.W.2d 19, 24 (Iowa 2004) (quoting *United States v. Daniels*, 770 F.2d 1111, 1116 (D.C. Cir. 1985)).

But no party to this case argues that the evidence of the dead cattle and unused farm equipment were not prior bad acts. We conclude the evidence was admissible. Rule 5.404 allows the introduction of prior acts evidence to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Iowa R. Evid. 5.404(b)(2). The State asserts "the challenged evidence is relevant to the material issue of Whittle's motive to kill his father." "Although motive is rarely an element of an offense, prior bad acts may be relevant to provide context and help explain why the defendant committed the charged acts." *Thoren*, 970 N.W.2d at 628. But "[m]otive, like any other noncharacter purpose for which evidence might be offered, must have been at issue in the case." *State v. Putman*, 848 N.W.2d 1, 10 (Iowa 2014). The State asserts the dead cattle and run-down farm equipment were evidence of the dire financial straits the farm was in, and that financial stress, which Whittle was intimately familiar with as the farm's bookkeeper, provided Whittle a motive to kill his father. Whittle asserts he killed his father in self-defense. Evidence of Whittle's motive was relevant to a material issue in this case. *See id.*

The probative value of this evidence was not outweighed by the danger of unfair prejudice. "Unfair prejudice arises when the evidence would cause the jury to base its decision on something other than the proven facts and applicable law, such as sympathy for one party or a desire to punish a party." *State v. Taylor*, 689 N.W.2d 116, 124 (Iowa 2004). Whittle argues this evidence was overly prejudicial because "the evidence implies that the defendant was neglecting the cattle to the

point of allowing them to unnecessarily die."[3]  We first note that photographs of dead or neglected animals have been admitted when relevant.  *State v. Wells*, 629 N.W.2d 346, 356 (Iowa 2001) (admitting such photos and discussing other cases in which such photos were admitted).  And the photos here were limited in both number and scope, depicting only a few dead animals, which were preserved by the freezing temperatures, in two photographs.  This fact shrinks any unfairly prejudicial effect.  *See id.* ("[T]he district court alleviated any potential prejudice by excluding the photographs that displayed severe decomposition and consumption by scavengers.").

Further, the evidence of dead cattle is not prejudicial in comparison to the scope of the case.  "When the question is whether the defendant committed a brutal murder, the prejudicial effect of evidence that" Whittle might be bad at caring for cows "amounts to a mere drop in the bucket."  *See State v. Richards*, 809 N.W.2d 80, 92 (Iowa 2012).  Whittle was not unfairly prejudiced by this evidence, and even if he were, that unfair prejudice did not substantially outweigh the evidence's probative value.

And even if we concluded the evidence were improperly admitted, which we do not, the record contains overwhelming evidence of Whittle's guilt.  "Reversal is not required for the erroneous admission of evidence unless prejudice results." *State v. Rodriquez*, 636 N.W.2d 234, 244 (Iowa 2001).  And "[t]o establish prejudice, [the defendant] must show a reasonable probability that but for the error the outcome of the trial would have been different."  *Id.* (quoting *State v. Crone*,

---

[3] Whittle offers no argument that evidence of the degraded farm equipment was overly prejudicial.

545 N.W.2d 267, 273 (Iowa 1996)). Overwhelming evidence of guilt in the absence of wrongfully admitted evidence makes the admission of that evidence harmless error. *Id.* at 244–45.

Whittle does not contend other evidence was wrongfully admitted, including photographs of a shotgun, dentures, folded glasses, and ash in a feeding trough; photographs of bloodstained carpet; video of Whittle walking between the park where the truck was left and the farm; photographs of Whittle buying carpet cleaner and paper towels; photographs of Whittle at a furniture store; evidence of internet articles viewed by Whittle, including articles titled "Could a human survive a shot to the head?" and "How does the safety work on the Browning 725 series shotgun," and then an hour later, evidence that he viewed an article titled "How to Get Blood Out of Clothes: 17 Mom-Approved Hacks"; and Whittle's admission that he shot his father. Even without the evidence of dead cattle and decaying farm equipment, there was overwhelming evidence of Whittle's guilt. The admission equates to harmless error. *See id.*

## IV. Conclusion

The challenged evidence was relevant, was not unduly prejudicial, and was admissible prior bad acts evidence pursuant to rule 5.404(b) to show motive. And even if it were improperly admitted, the admission was harmless error. Accordingly, we affirm.

**AFFIRMED.**